831 So.2d 460 (2002)
STATE of Louisiana
v.
Elston ROBINSON.
No. 02-KA-530.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*463 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant D.A., Alison Wallis, Assistant D.A., Gretna, LA, for Plaintiff-Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Elston Robinson, a/k/a Elston Robertson, with two counts of distribution of cocaine,[1] in violation of LSA-R.S. 40:967A. Defendant entered a plea of not guilty, and thereafter filed several pre-trial motions, including a motion to suppress identification. Following a hearing, the trial judge denied defendant's motion to suppress. The matter then proceeded to trial before a twelve person jury which found defendant guilty as charged. As a result of this conviction, the district court judge sentenced defendant to twenty years of imprisonment at hard labor, without benefit of parole, probation or suspension of sentence for five years, but with credit for time served.
The state then filed a multiple offender bill of information alleging that defendant was a fourth felony offender, LSA-R.S. 15:529.1. After a hearing, the court found defendant to be a fourth felony offender, vacated the original sentence, and sentenced defendant to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant now appeals.

FACTS
Based upon citizen complaints of drug transactions in the area, Jefferson Parish Narcotics Officers Corey Wilson and Megan Carter set up an undercover drug operation in the Shrewsbury area of Jefferson Parish. On May 26, 2000, at approximately 6:45 p.m., Agent Carter drove to the corner of Lausat and Arnoult Streets in an unmarked vehicle that was equipped with a video and audio transmitter. Agent Carter observed two black males and two black females by the corner and indicated to them, by a signal, that she was looking for two "20s."[2] According to the undercover agent, one of the black males, subsequently identified as defendant, flagged her down and motioned for her to pull over, which she did. Defendant then walked to the passenger side of the vehicle to ask Carter what she wanted. Agent Carter did not roll down the passenger side window, and defendant walked around the back of the vehicle and proceeded to the driver's side. When questioned by defendant, Agent Carter told *464 him she wanted two "20s." Thereafter, defendant gave the undercover officer two rocks of what appeared to be crack cocaine, and she gave him $40. After the transaction was complete, Agent Carter broadcasted a description of the subject as being a black male with missing front teeth, wearing a white T-shirt, blue jeans and red tennis shoes. She then drove away from the scene in order to meet with Officer Wilson. Agent Carter gave Officer Wilson the videotape and the two rocks that were purchased. Officer Wilson field-tested the two rocks, and the substances tested positive for cocaine. Subsequent testing by the crime lab confirmed that result.
When Officer Wilson later reviewed the videotape, he was able to identify defendant.[3] Based upon that, Agent Wilson compiled a photographic lineup. On June 30, 2000, Agent Carter viewed this lineup and positively identified defendant as the person who had sold her the narcotics. Defendant was subsequently arrested and charged with distribution of cocaine.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him. He specifically contends that the state failed to prove his identity as the perpetrator. Defendant argues that Agent Carter's identification was unreliable because she was not familiar with the seller, the drug sale took place in less than a minute, and, during most of the time, the undercover agent was watching the subject though her vehicle's mirror.
In determining a challenge to the sufficiency of the evidence, the reviewing court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78. When identity is an issue, the state must negate any reasonable probability of misidentification. State v. Washington, 00-301 (La.App. 5 Cir. 9/26/00), 769 So.2d 1235, 1239, writs denied, 00-2971 and 00-3041(La.8/28/01) 798 So.2d 106, 108. In applying this standard, the reviewing court will not access credibility nor reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La. 1986). The trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
In this case, defendant was charged with of distribution of cocaine, in violation of LSA-R.S. 40:967A. Pursuant to that statute, the state was required to prove that defendant knowingly or intentionally distributed cocaine. State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 640, writ denied, 01-1906 (La.5/11/02), 815 So.2d 833. We find that the state proved the elements of the offense as well as the identity of defendant as the perpetrator.
At trial, Agent Carter testified that on May 26, 2000, at approximately 6:45 *465 p.m., she first made eye contact with defendant as he stood in a group of three other people located about ten feet from the officer. She watched defendant as he approached her vehicle, and in fact, his approach was recorded on the vehicle's video equipment. Defendant initially came to the passenger side of the vehicle, but the agent would not roll down that window. Agent Carter then watched defendant as he circled around the back of the vehicle to get to the driver's side. When questioned by defendant, Agent Carter told him that she wanted two "20s." Defendant thereafter gave Agent Carter two rocks of crack cocaine, and in return, she gave him $40.00. Agent Carter estimated that the drug deal took a little over 30 seconds. Following the transaction, she broadcasted a description of the perpetrator as a black male, wearing a white T-shirt, blue jeans and red tennis, and a distinguishing factor, missing front teeth.
Agent Carter further testified that she was trained to identify people. She also testified that she paid particular attention to this subject because she did not want to later identify the wrong person. She was certain that this was the person who sold her the two rocks of crack cocaine on May 26, 2000, and she was not confusing him with anyone else. Agent Carter was unwavering in her identification of the defendant as the person who sold her the illegal drugs.
Given these facts, we find that the state proved beyond a reasonable doubt the elements of the crime of distribution of cocaine, including the identity of defendant at the perpetrator. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant contends that the trial court erred in denying his motion for mistrial after the prosecutor, in opening arguments, made an indirect reference to "other crimes" committed by defendant. Defendant specifically complains about the following portion of the prosecutor's opening argument:
.... Well, as soon as the drug deal took place, Agent Carter then moved to a secure location where she met with Corey Wilson. Detective Wilson took the drugs from Agent Carter, broke a little of them off and conducted what's known as a preliminary field test. Once those drugs tested positive for cocaine they then left and relocated to the detective bureau where after Corey Wilson viewed that video tape he'll come in and tell you that he recognized the person on that tape as being the Defendant. (Emphasis added).
Thereafter, defense counsel moved for a mistrial alleging that this statement was a clear indication that the officer recognized defendant from previous criminal activity. He, therefore, reasoned that this was impermissible evidence of another crime. The trial judge denied defendant's motion for mistrial, finding that the prosecutor's argument did not amount to evidence of another crime committed by defendant. Defendant now challenges that denial. He argues that the prosecutor's statement was an indirect reference to other crimes evidence because it infers that the policeman knew defendant as a result of previous criminal activity. We find no merit to this argument.
Except under certain statutory or jurisprudential exceptions, evidence of other crimes or bad acts committed by the defendant is inadmissible at trial. LSA-C.E. art. 404B(1). LSA-C.Cr.P. art. 770 mandates a mistrial upon motion of a defendant, "when a remark or comment made *466 within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... another crime committed or alleged to have been committed by the defendant as to which evidence is inadmissible."
It has been held that a police officer's simple reference to a familiarity with the defendant and observation of him on other occasions does not constitute a reference to "another crime" committed by the defendant within the meaning of LSA-C.Cr.P. art. 770(2). State v. Sebble, 567 So.2d 160 (La.App. 4 Cir.1990).
An argument similar to the one presented herein was addressed by this court in State v. Jones, 00-162 (La.App. 5 Cir. 7/25/00), 767 So.2d 862, writ denied, 00-2484 (La.6/22/01), 794 So.2d 783. In that case, a police officer testified that when he stopped to investigate an alleged crime, he saw one of the subjects he knew, namely, the defendant. Concluding that the officer's comment did not amount to other crimes evidence, this court stated as follows:
[t]here is no specific mention of a prior crime or bad act. The mere fact that a police officer testifies to having previously known the defendant does not amount to improper introduction of other crimes evidence, where there is no reference to a specific crime or criminal activity. (Citations omitted).
Based on the foregoing, we find no error in the trial judge's refusal to grant defendant's motion for mistrial. This assigned error is likewise without merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, defendant attacks the trial court's finding that he was a fourth felony offender.
In seeking to have defendant adjudicated a fourth felony offender, the state filed a bill of information alleging that defendant had previously been convicted of the crimes of purse snatching in 1983, possession with intent to distribute cocaine in 1990, and distribution of cocaine in 1994. After a hearing, the court found that the state produced sufficient evidence to establish defendant's prior convictions, and accordingly found him to be a fourth felony offender. Defendant now contends that the evidence was insufficient to support such a finding.
To prove a defendant is a habitual offender, the state must initially prove the prior felony conviction and that defendant is the same person who was convicted of the prior felony, as well as that the predicate conviction falls within the applicable time period prescribed by the Multiple Offender Statute. LSA-R.S. 15:529.1(C); State v. Mims, 00-1507 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766.
On appeal, defendant first alleges that there was insufficient proof that he was a fourth felony offender because more than five years elapsed between his 1983 conviction and his 1990 conviction, and the state failed to prove the actual discharge date. Defendant asserts that the five year period, in effect at the time of his first felony conviction, is applicable and that it had elapsed when defendant committed the second felony in 1990.
Until it was amended in 1994, LSA-R.S. 15:529.1 provided for a cleansing period of five years. In 1994, the cleansing period was increased to seven years, and in 1995, to ten years. The period to be applied is the one in effect at the time defendant committed the last of the offenses used to enhance the sentence, because a habitual offender proceeding does not charge a new crime, but is merely a *467 method of increasing the punishment of habitual offenders. State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 228.
If less than the period has elapsed between a defendant's conviction on a predicate felony and the commission of a subsequent predicate felony, the state need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. Otherwise, evidence of the actual date of discharge from supervision by the Department of Corrections is required, because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. State v. Brooks, 01-864 (La.App. 5 Cir. 1/29/02), 807 So.2d 1090, 1101-1102.
In this case, the applicable time period would be ten years. Since less than ten years elapsed between the time of defendant's 1983 conviction and his 1990 conviction, the state had no obligation to prove the discharge date of the earlier sentence in these habitual offender proceedings.
Defendant next argues that the evidence was insufficient to prove that he was a fourth felony offender because the state failed to prove his 1994 conviction. He reasons that no minute entry of this guilty plea in 1994 was presented by the state and, hence, the proof was insufficient for multiple bill purposes. He alleges that the state was obligated to present either a minute entry or Boykin transcript and not merely a Boykin form.
When the state relies on a prior conviction that is based on a guilty plea to prove defendant's multiple offender status and the defendant denies the allegations of the multiple bill, the state has the burden of proving the existence of the prior guilty plea and that defendant was represented by counsel. Once the state meets this burden, the defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the plea. If the defendant meets this burden, the burden shifts back to the state to prove the constitutionality of the plea. The state can meet this burden by producing a "perfect" transcript of the guilty plea colloquy. A "perfect" transcript is one that reflects a voluntary, informed, and articulated waiver of the three specific rights discussed in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969): 1) the right to a trial by jury, 2) defendant's privilege against self incrimination, and 3) his right to confront his accusers. Anything less than a "perfect" transcript, such as a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, requires the trial judge to weigh the evidence submitted by both sides and determine whether defendant's prior guilty plea was knowing and voluntary and made with a waiver of the Boykin rights. State v. Shelton, 621 So.2d 769 (La.1993); State v. Brooks, supra.
With regard to defendant's 1994 conviction, the record indicates that the state offered a certified copy of the bill of information charging defendant with distribution of cocaine, a certified copy of the waiver of rights form, and a certified copy of the hard labor plea sentencing form. The waiver of rights form shows that defendant was specifically advised of and waived his Boykin rights. In the form, specific mention was made of defendant's right to a jury trial, right against self-incrimination, and right of confrontation. The defendant indicated by his initials that he was advised of and waived the enumerated rights. The form further indicates that defendant understood the consequences *468 of the plea, and that he was not forced, coerced or threatened to enter the guilty plea. The form was signed by defendant, his attorney, and the judge. Additionally, the hard labor plea sentencing form[4] indicates that defendant was represented by counsel, was advised of his rights, and waived his rights. In light of this evidence, we find that the state met its initial burden under Shelton of proving the existence of the prior plea and representation by counsel in the taking of the plea.
Once the state made this initial showing, the burden shifted to the defendant to establish an infringement of his rights or a procedural irregularity in the taking of the guilty plea. Defendant did not testify or present any affirmative evidence at the hearing which would show an infringement of his rights or a procedural irregularity. Defendant merely argued that the state failed to produce a minute entry or a transcript for his 1994 guilty plea and thus, the documents offered were insufficient for multiple bill purposes. Because defendant failed in his proof, the burden never shifted back to the state to prove the constitutionality of the 1994 guilty plea.
Based on the foregoing discussion, we find that the documents introduced by the state relating to defendant's 1994 guilty plea were sufficient to show the existence of a guilty plea and that defendant was represented by counsel when the plea was taken.
Accordingly, we reject the arguments raised by defendant in this assignment of error and find that the trial judge properly found defendant to be a fourth felony offender.

ASSIGNMENT OF ERROR NUMBER FOUR
In the present case, defendant was found to be a fourth felony offender and was sentenced to the mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension. LSA-R.S. 15:529.1(A)(2)(c)(ii). He now contends that the imposition of a life sentence is constitutionally excessive given the circumstances of this case. To support this argument, defendant points to the small amount of cocaine which was involved as well as the fact that this was not a crime of violence.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Brown, 01-160 (La.App. 5 Cir. 5/30/01), 788 So.2d 667.
The Louisiana Supreme Court has repeatedly upheld the constitutionality of the Habitual Offender Law, and accordingly, the minimum sentences it imposes are likewise presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). In order to rebut the presumption that the mandatory minimum sentence is constitutional, defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Downward departures from the minimum sentence under the Habitual Offender Statute *469 should occur only in rare situations. State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339; State v. Johnson, supra; State v. Dorthey, supra. A downward departure from the minimum sentence mandated by the Habitual Offender Statute is warranted if the trial court determines that the minimum sentence mandated makes no measurable contribution to acceptable goals of punishment or that the sentence amounts to nothing more than a purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the offense. State v. Washington, supra. If a downward departure is warranted, the trial judge shall sentence the defendant to the longest sentence, which is not constitutionally excessive. State v. Johnson, supra.
While defendant points to the minimal amount of cocaine sold as well as the non-violent nature of the offense, he has made no showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment. We note that the trial judge was aware of the facts surrounding the sale and was also aware of defendant's prior criminal history, which included additional drug violations and a crime of violence. We have also considered appellate counsel's argument that defendant sold drugs because he "most probably was addicted to cocaine." There is no evidence in the record to support defense counsel's allegation. This supposition is purely speculative and cannot form the basis for a downward departure in sentence.
As part of this assigned error, defendant also argues that the sentence is excessive in light of recent legislation showing an intent to impose lesser sentences and/or alternative programs to treat people convicted of drug related offenses. In State v. Sugasti, 01-3407 (La.6/21/01), 820 So.2d 518, the Louisiana Supreme Court addressed this issue and stated:
Although the trial judge should consider the ameliorative changes in the law in imposing sentence, the trial judge should not derogate from the penalty provision in effect at the time of the commission of the offense.
Based on the foregoing discussion, we reject defendant's claim of excessiveness and find no error in the sentence imposed by the trial judge.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors which would require corrective action.
For the reasons set forth herein, defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] The state entered a nolle prosequi as to count 2 of the bill of information.
[2] This is street language for $20 of narcotics.
[3] The videotape did not record the actual transaction because the camera was only set up to video the passenger side of the vehicle. The video, however, did capture defendant when he first approached the vehicle on the passenger side.
[4] This form appears to be in the nature of a minute entry combined with a commitment.