Robert BRATCHER, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2012–SC–000627–MR.

Supreme Court of Kentucky.

Feb. 20, 2014.

V. Gene Lewter, Department of Public
Advocacy, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Department of Public Advocacy, Julie Scott Jernigan, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Robert Bratcher, appeals as a matter of right, Ky. Const. § 110(2)(b), from a judgment of the Muhlenberg Circuit Court sentencing him to a total of twenty-one years imprisonment following his conditional guilty plea to manufacturing methamphetamine and second-degree persistent felony offender (PFO) status. In connection with his guilty plea, Appellant reserved for appeal the issue of whether the trial court erred by denying his motion to suppress the drug-related evidence seized during a warrantless search of his residence by a state police officer and a parole officer.

At the time of the search, Appellant was a parolee under the supervision of the Kentucky Department of Corrections. He bases his argument upon the Fourth and Fourteenth Amendments to the United States Constitution and the United States Supreme Court's decision in *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), holding that a warrantless intrusion upon a probationer's "significantly diminished privacy interests" is reasonable under the Fourth Amendment only when an officer has "reasonable suspicion" that the probationer is engaged in criminal activity. *Id.* at 121, 122 S.Ct. 587.

Because Appellant bases his argument exclusively upon the federal constitution and judicial interpretations thereof, we limit our review accordingly and need not evaluate his arguments under any corresponding provisions of the Kentucky Constitution. We conclude that the United States Supreme Court's opinion in *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), negates the argument upon which Appellant relies and, therefore, we affirm his conviction and sentence.

## I. FACTUAL AND PROCEDURAL HISTORY

Testimony presented at the suppression hearing discloses the following facts. While investigating suspected illegal activity of William Zguro, police officer Troy Gibson was informed by Zguro that Appellant had at his home items used to manufacture methamphetamine, and that Appellant had said he was then planning to "do a cook." [1] Officer Gibson also had independent knowledge of Appellant's prior criminal activity and so, accompanied by another police officer, he went to Appellant's home and asked Appellant for permission to search the residence. Appellant declined the request.

Using his cell phone, Gibson then contacted Appellant's parole officer, Cynthia Moore, and informed her that he was at Appellant's residence investigating allegations of illegal activity, and that Appellant had not permitted him to conduct a search. Gibson then allowed Appellant to use the phone to speak with Moore. Moore reminded Appellant that his parole agreement required him to allow parole officers to search his residence. Moore told Appellant that he should consent to the search and consequently, Appellant consented.

Gibson then recruited another parole officer, Paul Newman, to assist in the search because Newman was closer than Moore to

---

**1.** As the trial court construed it, "doing a cook" means making methamphetamine.

Appellant's residence. Gibson and Newman searched Appellant's residence and discovered various items used for the manufacture of methamphetamine, including 144 pseudoephedrine tablets. Appellant was subsequently charged for the offense of manufacturing methamphetamine and for being a first-degree PFO.

In his pre-trial motion to suppress the evidence, Appellant argued that the search violated his Fourth Amendment right to be free of an unreasonable search because Newman, the parole officer involved in the search, did not have sufficient information to constitute a "reasonable suspicion" that Appellant was engaged in illegal conduct. The trial court concluded that the officer had reasonable suspicion to justify the search so it denied the suppression motion. Thereafter, Appellant and the Commonwealth negotiated a conditional plea agreement reserving the suppression issue for appeal. The trial court accepted the plea and judgment was entered accordingly. This appeal followed.

## II. ANALYSIS

On appeal, Appellant reiterates his argument that the search of his residence was not supported by information sufficient to establish reasonable suspicion. Specifically, he contends that because Officer Gibson never informed the parole officers of the source of his information about Appellant's illegal activity, the parole officers could not have properly assessed the veracity of the information to form reasonable suspicion. He argues that, without reasonable suspicion, the search did not comply with any exceptions to the warrant requirement and was therefore in violation of his Fourth Amendment right to be free of an unreasonable search.

■ We begin by noting that the trial court specifically found that after discussing his situation with his parole officer,

Appellant consented to the search of his residence. Consent to a police search of a residence by a person who has the authority to give the consent is a valid exception to the rule against warrantless searches. *Payton v. Commonwealth*, 327 S.W.3d 468, 479 (Ky.2010) (citing *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky.1992)). This finding alone would have been sufficient to support the legality of the warrantless search.

Nevertheless, the trial court focused its analysis on Appellant's parole status and the constitutional standards relating thereto, defining the issue as follows: "did Newman have reasonable suspicion that Bratcher was violating his parole and was the subsequent search therefore lawful." The trial court resolved that issue by citing the "reasonable suspicion" requirement of *Knights* and concluding that Newman, the parole officer on the scene, had sufficient information of Appellant's alleged illegal activity to form a reasonable suspicion that Appellant was engaged in illegal conduct. Since this question (rather than consent) was the focus of the trial court's analysis and the focal point of the parties' arguments to this court, we address the issue so as to highlight the impact of *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), on this aspect of our Fourth Amendment jurisprudence.

In *Knights*, the United States Supreme Court held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 121, 122 S.Ct. 587. The decision attached particular significance to the probationer's acceptance of a clear and unambiguous search condition,

finding that this fact "significantly diminished Knights' reasonable expectation of privacy."[2] *Id.* at 119–20, 122 S.Ct. 587.

Although *Knights* considered the warrantless search of a *probationer's* residence, by analogy we specifically applied the decision's reasoning to *parolees* in *Riley v. Commonwealth,* 120 S.W.3d 622 (Ky. 2003).[3] Thus, because *Knights* applied the "reasonable suspicion" standard in probationer cases, *Riley* incorporated that same standard into the parolee search situation. We also noted that Riley had agreed as a condition of parole that he would "be subject to search and seizure if [his parole officer] has reason to believe that [he] may have illegal drugs, alcohol, volatile substance, or other contraband on [his] person or property." *Id.* at 627.

More recently, however, the United States Supreme Court has specifically considered Fourth Amendment jurisprudence pertaining to the warrantless search of a parolee, in contrast to the search of a probationer's residence as in *Knights.* In *Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), comparing parolees with regular probationers, the Court held:

> [P]arolees are on the continuum of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, parole is an established variation on imprisonment of convicted criminals. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements . . . On the Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers.

*Id.* at 850, 126 S.Ct. 2193.

In *Samson,* the Court examined the constitutionality of a California statute requiring parolees to agree "to be subject to search or seizure by a parole officer or other peace office at any time of the day or night, with or without a search warrant and with or without cause."[4] Upon review, the Supreme Court upheld the statute, concluding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 856, 126 S.Ct. 2193. Hence, while the requirement for a warrantless search of a probationer's residence remains the "reasonable suspicion" standard enunciated in *Knights,* based upon *Samson,* there is no analogous requirement under the federal constitution for the search of a parolee's residence.

In summary, the current state of Fourth Amendment analysis under United States Supreme Court precedent is that a warrantless search of a probationer who

---

**2.** Appellant appears to concede that he similarly executed a clear and unambiguous search condition as a condition of his parole.

**3.** *See also Wilson v. Commonwealth,* 998 S.W.2d 473 (Ky.1999) (upholding search of parolees vehicle under "reasonable belief" standard), *Coleman v. Commonwealth,* 100 S.W.3d 745 (Ky.2002) (authorizing search of parolee's residence upon "reasonable suspi-

cion"); and *Clay v. Commonwealth,* 818 S.W.2d 264 (Ky.1991) (applying reasonable suspicion standard to parolee search). Significantly, our holding today abrogates these pre-*Samson* cases insofar as they are based upon provisions of the United States Constitution.

**4.** Cal.Penal Code § 3067(a).

has given consent as part of his probation satisfies the Fourth Amendment if there is reasonable suspicion of criminal activity, but the Fourth Amendment presents no impediment against a warrantless and *suspicionless* search of a person on parole. In view of *Samson,* it remains undecided whether a warrantless search without reasonable suspicion of a probationer, rather than parolee, is consistent with the Fourth Amendment. *United States v. Seigle,* 628 F.Supp.2d 784, 797 (E.D.Tenn.2008); see also *United States v. Herndon,* 501 F.3d 683 (6th Cir.2007) (discussing *Samson*).

 Under the Fourth Amendment analysis set forth in *Samson,* it is immaterial whether the information available to the officers who searched Appellant's residence rose to the standard of reasonable suspicion. The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. *Samson,* 547 U.S. at 857, 126 S.Ct. 2193. Without a constitutional right underpinning his motion to suppress, Appellant has no basis for application of the exclusionary rule. *Copley v. Commonwealth,* 361 S.W.3d 902, 905 (Ky.2012) ("Suppression of evidence pursuant to the exclusionary rule applies only to searches that were carried out in violation of an individual's constitutional rights.").

As noted in *Riley,* we are aware of Department of Corrections Policy No. 27–16–01 II(D),[5] which authorizes the Department's officers to search a parolee when there is "reasonable suspicion to believe that an offender is in possession of contraband or in violation of the conditions of his supervision," and "when the officer has possession of evidence of a violation of the terms and conditions of [the offender's] supervision."

 Although these provisions may be seen as more stringent than *Samson,* they do not alter the Fourth Amendment analysis. It is fundamental that by administrative rule or statute a state may impose upon its police authorities more restrictive standards than the Fourth Amendment requires. Such standards, however, cannot expand the scope of the Fourth Amendment itself. *Virginia v. Moore,* 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (a state is free to prefer one search and seizure policy among several constitutionally permissible options, but its choice of a more restrictive option does not render less restrictive ones violative of the Fourth Amendment). Moreover, as noted above, under *Copley,* even when a search of a parolee is conducted in derogation of Department of Corrections policy, the evidence obtained would not be subject to suppression by application of the exclusionary rule.

The dissent is mistaken when, in contrasting this case with our opinion in *Helphenstine v. Commonwealth,* 423 S.W.3d 708, 2014 WL 683829 (Ky.2014), it suggests that in *Helphenstine* we considered whether the search of Helphenstine's residence was based upon reasonable suspicion. In

---

**5.** Kentucky Department of Corrections Policy No. 27–16–01 II(D):

Search Without Consent

1. If an officer has reasonable suspicion to believe that an offender is in possession of contraband or in violation of the conditions of his supervision, the officer may conduct an investigation and search to validate the suspicion or information received. Each case shall be discussed with the District Supervisor or designee, if possible, before any action is taken by the officer and the purpose of the search articulated.

2. Warrantless Search

a. If reasonable suspicion exists to believe that an offender is violating a condition of supervision or the officer has possession of evidence of a violation of the terms and conditions of his supervision, an officer may search without a warrant.

that opinion we gave no consideration at all to the claim that the police lacked reasonable suspicion to conduct the search. We said this in *Helphenstine:*

> Helphenstine spends a good portion of his brief arguing the absence of reasonable suspicion, but we find the search conducted by law enforcement officials of Helphenstine's residence to be reasonable because consent was given. So we see no reason to rely on reasonable suspicion. First, it is important to point out that the law enforcement officials had a legal right to be at Helphenstine's residence and engage Helphenstine with or without the information provided in the anonymous tip letter.

423 S.W.3d at 715, 2014 WL 683829 at *4. Thus, in considering the propriety of the search of Helphenstine's residence, we never looked beyond the fact that Helphenstine consented to it.

Neither did we suggest in *Helphenstine*, as the dissent indicates, that Kentucky case law affords parolees greater privacy protections than the United States Supreme Court accorded to the Fourth Amendment in *Samson v. California. Helphenstine*, like this opinion, refers only to the privacy interests protected by the Fourth Amendment as described in *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), and prior opinions of this court citing to *Knights*. These cases, as noted, are applicable to probationers not parolees, which is the subject matter of *Samson v. California*. We have not, either in *Helphenstine* or in this case, affirmed a construction of parolees' privacy rights against police searches based upon the Kentucky Constitution.

### III. CONCLUSION

Despite its application of *Knights,* rather than the more appropriate standard of *Samson,* we determine that the trial court ultimately reached the correct conclusion when it denied Appellant's motion to suppress the evidence seized from his residence. The judgment of the Muhlenberg Circuit Court is affirmed.

MINTON, C.J., ABRAMSON, CUNNINGHAM, KELLER and SCOTT, JJ., concur.

NOBLE, J., dissents by separate opinion.

NOBLE, J., Dissenting:

In a case rendered today, *Michael Helphenstine v. Commonwealth of Kentucky,* 2012–SC–000251–MR, this Court considered the propriety of the search of a parolee's residence because an evidentiary hearing was not held on the motion to suppress, and only legal arguments were considered. Helphenstine also challenged the denial of the motion to suppress on legal grounds. We held that Helphenstine had not preserved the hearing issue, and affirmed the trial court's ruling on the legal merits. Helphenstine primarily argued that the motion to suppress should have been granted because of the warrantless search of his residence. We denied his claim based on the fact that the Commonwealth had, by regulation, allowed the search of a parolee's residence without a warrant, and by accepting parole Helphenstine had in fact consented to the search. We also noted that, even so, such searches must satisfy the Fourth Amendment's reasonableness requirement. Under the facts of the case, we held that the search was reasonable.

The important point of *Helphenstine* is that he actually got a consideration of whether the search was reasonable.

In this case, the majority holds that under federal law, such a search need not be reasonable: "suspicionless" searches of parolee's residence are appropriate, track-

ing of the federal standard set forth in *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). Both *Helphenstine* and this case rely on a parolee's consent that allows a warrantless search. But, in *Helphenstine*, the reasoning went on to a second step: considering whether the warrantless search was reasonable. Under *Samson*, such "reasonable suspicion is not required." Thus it would appear that to this extent, Kentucky and federal precedent differ. Under Kentucky law, there is a greater degree of scrutiny than under federal law. Presumably, if the facts in *Helphenstine* warranted, an unreasonable warrantless search would be suppressed.

Yet in this case, because the Appellant raised only his Fourth Amendment rights, and did not specifically mention the Kentucky Constitution, we have adopted the federal rule and held that reasonable suspicion is not required in his case.

I find these two cases oxymoronic. Either we should adopt the *Samson* reasoning as applying to all Kentucky cases similarly situated, or we should recognize that Kentucky law provides a level of review beyond that allowed in federal court. Because I believe the Kentucky view is more appropriate, I concurred in *Helphenstine* and dissent in this case. A court is not constrained to consider only the law argued by a party when other law is applicable. Doing so results in the disparate analysis in these two cases.