# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 22, 2018
NOT TO BE PUBLISHED

## Supreme Court of Kentucky

FINAL

2017-SC-000217-MR

DATE 4/12/18 Kim Redmon, DC

SHELBY JOE NIX             APPELLANT

ON APPEAL FROM BULLITT CIRCUIT COURT
V.        HONORABLE RODNEY D. BURRESS, JUDGE
NO. 16-CR-00061

COMMONWEALTH OF KENTUCKY          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Shelby Joe Nix (Nix) was involved in a traffic stop that led to his arrest and subsequent indictment in Bullitt County. Nix proceeded to trial and was convicted by a Bullitt County jury of trafficking in a controlled substance (>2 grams methamphetamine), first degree, and possession of open alcohol beverage container in a motor vehicle. He was also found to be a persistent felony offender in the first degree by the jury. Pursuant to the jury's recommendation, the Bullitt County Circuit Court sentenced him to 20 years to serve. He appeals as a matter of right to this Court on several grounds: (1) that the circuit court should have granted his motion to suppress; (2) that the Commonwealth was permitted to introduce Kentucky Rule of Evidence (KRE)

404(b) evidence, violating his due process rights; (3) that the circuit court erred in allowing an officer to testify as an expert; and (4) that the circuit court should have granted his motion for mistrial, based on a discovery violation. For the reasons discussed herein, we affirm the final judgment and sentence of the Bullitt Circuit Court.

## I.    BACKGROUND

In 2015, Nix was placed on probation in Bullitt Circuit Court. One of the conditions of his probation was that he not participate in "scrapping." One of the probation office supervisors, Officer Phil McHargue, was familiar with Nix and had problems with him complying with a no-scrapping rule in the past. Therefore, he asked local law enforcement to watch out for Nix because he believed Nix was likely to violate this rule again.

On January 2, 2016, Lebanon Junction Police Officer Joshua Waters saw Nix in traffic pulling a load of old metal. When Nix turned in front of him, Waters noticed that Nix's car did not have a license plate. Waters contacted McHargue on his way to intercept Nix and initiate a traffic stop. Ultimately, Waters did pull Nix over but found he did have a license plate; the license plate, however, was not displayed as required by law. McHargue arrived on scene and Waters asked Nix to exit the vehicle. They questioned Nix about the scrap and McHargue called his supervisor. McHargue, under his supervisor's advice, placed Nix under arrest for violation of his probation condition not to scrap. McHargue and Waters searched Nix's vehicle and found a pouch with 19 small baggies of a white, powdery substance later determined to be

methamphetamine. Nix was subsequently charged with operating a motor vehicle without the rear license plate being illuminated; possessing an open alcoholic beverage container in a motor vehicle; trafficking in a controlled substance (>2 grams methamphetamine), first degree; and for being a persistent felony offender in the first degree. Nix proceeded to trial, at which time he was convicted, and the jury recommended an enhanced sentence of twenty years to serve.

## II. ANALYSIS

### A. The circuit court did not err in denying Nix's motion to suppress.

At the outset, we recognize that "we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law" in reviewing a trial court's denial of a suppression motion. *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006). The circuit court made the following findings of fact regarding the traffic stop on January 2, 2016:

> Officer Waters observed [Nix] moving South on Highway 61. Officer Waters testified the vehicle which [Nix] was driving did not appear to have a license plate. Further, [Nix] was pulling a trailer filled with assorted pieces of old metal. Officer Waters testified that he recognized [Nix] at that time. Further, Officer Waters testified that Probation and Parole Officer Phil McHargue had instructed Lebanon Junction law enforcement to contact him should any officer observe [Nix] 'scrapping,' as doing so was a violation of the terms of [Nix]'s probation.
> Traffic conditions kept Officer Waters from pulling out directly onto Highway 61. Rather, Officer Waters moved to intercept [Nix] at the intersection of Church and Main Street. While in route, Officer Waters called Probation and Parole Officer Phil McHargue to report [Nix]'s apparent involvement in scrapping.
> Upon intercepting [Nix], Officer Waters was still unable to see [Nix]'s license plate. Therefore, Officer Waters testified he initiated his lights and stopped [Nix]. ...

3

> While approaching [Nix]'s vehicle[,] Officer Waters saw [Nix]'s license plate. However, the plate was severely scratched and was leaning up against the ball of the truck instead of being properly attached. Officer Waters informed [Nix] that he was stopped because of his improper license plate.
> Officer Waters testified that he then returned to [Nix]'s vehicle and made small talk with [Nix].
> ...
> Officer McHargue arrived within eight minutes of [Officer Waters'] initiation of the traffic stop. Upon his arrival, Officer McHargue instructed [Nix] to exit his vehicle. Officer Waters testified that as [Nix] exited the vehicle several items were in plain view that are prohibited by [Nix']s probation in another case. There was a sword next to the center console of the vehicle. There were also several empty bottles of [whiskey] in the vehicle floor boards.

Thereafter, McHargue placed Nix under arrest and requested that Waters transport him to the detention center.

First, this Court must determine whether there is clear error in any of the circuit court's findings. "[F]indings of fact are clearly erroneous only if they are manifestly against the weight of the evidence." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967)). There are three findings which this Court must find are against the weight of the evidence. First, the trial court stated that Waters saw Nix's license plate while approaching him at first contact. However, Waters clearly testified that he only saw the license plate after Nix informed him that the license plate was present and Waters went and examined it. Second, the trial court found that Officer McHargue instructed Nix to exit his vehicle. It was actually Officer Waters that testified that he told Nix to get out of his vehicle when McHargue arrived at the scene. And third, the trial court found that Waters testified that he saw several items, including a sword and empty bottles

4

of whiskey, in the vehicle when Nix exited the vehicle. It was actually McHargue who testified about finding these items; Waters specifically stated he never saw any contraband until after McHargue located the items in his search of the vehicle. To the extent these facts are contrary to the evidence at the hearing, we must find clear error. However, these facts do not ultimately affect the conclusions of law, which we review *de novo*.

The trial court determined that Waters was justified in initiating the traffic stop. The court further found that, based on his observations and understanding of scrapping, Waters had reasonable suspicion to believe that Nix was violating his probation. The court also found that, under the voluntarily signed conditions of probation, Nix had consented to cooperate with a peace officer working at the direction of a probation officer. Thus, Nix had consented, by means of these conditions, to a detention past the initial stop in order to cooperate with Waters, at the direction of McHargue. Under these same conditions, Nix agreed that an officer could conduct a warrantless search if that officer has reasonable suspicion to believe Nix was violating the conditions of his probation. Due to these grounds, the trial court overruled Nix's motion to suppress.

We agree with the trial court that Waters was justified in initiating the traffic stop. At the outset, we note that Nix's objection to Waters' subjective intent in initiating the traffic stop is irrelevant. An "officer's subjective intention is irrelevant here; subjective intentions do not play a role in either a probable cause or a reasonable suspicion analysis under the Fourth

5

Amendment." *Lamb v. Commonwealth*, 510 S.W.3d 316, 322 (Ky. 2017). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) (citing *United States v. Robinson*, 414 U.S. 218 (1973))). Thus, so long as the objective justification for the traffic stop and further delay remain, Waters' intent is immaterial.

Here, Waters was unable to view a license plate, correctly displayed according to law. "It has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred." *Davis v. Commonwealth*, 484 S.W.3d 288, 291 (Ky. 2016) (quoting *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013) (citing *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky. 2001))). "As long as an officer 'has probable cause to believe a civil traffic violation has occurred, [he] may stop [the] vehicle regardless of his or her subjective motivation in doing so[.]'" *Davis*, 484 S.W.3d at 291 (citing *Bucalo*, 422 S.W.3d at 258 (quoting *Wilson*, 37 S.W.3d at 749)). Based on Waters' objective view of the scene, and his clear inability to see a properly-displayed license plate, he had probable cause to detain Nix for a traffic stop.

However, a traffic stop is limited in many ways, so as to minimize the intrusion upon Fourth Amendment rights. A seizure for a traffic stop "remains lawful only 'so long as [unrelated] inquiries do not measurably extend the

6

duration of the stop.'" *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015) (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). This Court has followed this principle and further clarified what is required for a traffic stop to be extended beyond the initial purpose. "[A]n officer cannot detain a vehicle's occupants beyond completion of the purpose of the initial traffic stop unless something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity [is] afoot." *Davis*, 484 S.W.3d at 292 (quoting *Turley v. Commonwealth*, 399 S.W.3d 412, 421 (Ky. 2013) (citations and internal quotations omitted)).

In *Davis*, the officer conducted a traffic stop and, after the driver had successfully passed his field sobriety tests, conducted a dog-sniff of the vehicle without any further information justifying that intrusion. 484 S.W.3d at 291. The officer had completed the purpose of the stop yet, without any further justification, extended the duration of the stop. This is an unconstitutional violation of fourth amendment rights. In *Bucalo*, by contrast, the officers did extend the traffic stop beyond its initial purpose but had separate and distinct circumstances justifying the extension. 422 S.W.3d at 260-61. There, the officers had information about Bucalo's suspicious behavior at a hotel she'd just vacated, a simultaneous stop of a person she had just been with at the hotel, and a search of that person that revealed drugs he claimed belonged to Bucalo. *Id.* at 260.

Here, we believe the extension of the stop is more analogous to the situation in *Bucalo* than in *Davis*. Officer Waters was not operating out of

curiosity or a mere hunch. He had information from Officer McHargue about the condition of Nix's probation. He had viewed Nix's vehicle, containing old metal scraps. Under his understanding of the situation, he had a reasonable suspicion at that time that Nix was violating the conditions of his probation. This, at least, justified the delay of the stop to further investigate whether "criminal activity [was] afoot." *See Davis*, 484 S.W.3d at 292. It just happened that Waters' further investigation, in this case, was to contact Officer McHargue and allow him to investigate the scene. Under the particularized facts of this situation, Nix's detention was justified by a reasonable suspicion that Nix had violated his probation. The delay of the stop was constitutionally sound.

The search of Nix's vehicle was also constitutionally sound. Probationers have diminished expectations of privacy; "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Bratcher v. Commonwealth*, 424 S.W.3d 411, 413 (quoting *United States v. Knights*, 534 U.S. 112, 121 (2001)). A "probationer's acceptance of a clear and unambiguous search condition ... 'significantly diminishe[s] [the probationer's] reasonable expectation of privacy.'" *Bratcher*, 424 S.W.3d at 413-14 (quoting *Knights*, 534 U.S. at 119-20). The trial court made a specific finding that Nix had agreed to a similar search consent in his terms of probation; we find no error in this finding. As such, Nix's expectation

8

of privacy was diminished and the search was constitutional so long as the officers involved had reasonable suspicion to believe a probation violation had occurred. At that time, Waters and McHargue had already arrested Nix for the violation; as such, we hold that the totality of the circumstances justified a finding of reasonable suspicion for this search. Therefore, the trial court did not err in overruling Nix's motion to suppress.

## B. The circuit court did not err in admitting KRE 404(b) evidence.

Prior to trial, the Commonwealth entered a notice pursuant to KRE 404(c). At a pretrial conference, the Commonwealth clarified that the "prior bad acts" evidence it intended to introduce was the fact that Nix was on probation at the time he was stopped and one of the conditions of that probation was that he was not to be scrapping. The Commonwealth stated the information was necessary to explain the presence of Officer McHargue and was inextricably intertwined with its case in chief. The defense did not object until the day of trial, arguing the evidence was not probative of any of the elements of the crime. The trial court overruled the objection and allowed the Commonwealth to introduce only the fact that Nix was on probation and he was prohibited from scrapping, finding that the evidence was inextricably intertwined with the Commonwealth's evidence. During trial, the Commonwealth did refer to Nix as being on probation and that, as a condition of that probation, he was prohibited from scrapping. The Commonwealth was prohibited from entering or referencing the underlying crimes for which Nix was on probation.

9

A trial court's ruling on evidentiary matters, including whether to permit KRE 404(b) evidence is reviewed for abuse of discretion. *Rucker v. Commonwealth*, 521 S.W.3d 562, 569 (Ky. 2017) (citing *Meskimen v. Commonwealth*, 435 S.W.3d 526, 534 (Ky. 2013) (citing *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007))). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Rucker*, 521 S.W.3d at 562 (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

First, it is clear that the evidence in question does fall under KRE 404, as "[e]vidence of other crimes, wrongs, or acts ... " Thus, it must meet one of the exceptions within KRE 404(b). The Commonwealth asserted, and the trial court determined, that the evidence in question was inextricably intertwined with the evidence necessary for the Commonwealth's case and thus admissible under KRE 404(b)(2). We agree. If evidence is "so inextricably intertwined with other evidence essential to the case that separation of the two ... could not be accomplished without serious adverse effect on the offering party[,]" then the evidence is admissible. KRE 404(b)(2). "The key to understanding this exception is the word inextricably. The exception relates only to evidence that must come in because it is so interwoven with the evidence of the crime charged that its introduction is unavoidable." *Major v. Commonwealth*, 177 S.W.3d 700, 707 (Ky. 2005) (quoting *Funk v. Commonwealth*, 842 S.W.2d 476, 480 (Ky. 1993)).

In *Major*, the Court addressed several pieces of KRE 404(b) evidence, some of which we held to be admissible and some of which was held inadmissible. However, of particular relevance here is a phone call between the defendant and his father while the defendant was incarcerated, at which time the defendant confessed. *Major*, 177 S.W.3d at 708. The rule allowing inextricably intertwined evidence is "intended to be flexible enough to permit the prosecution to present a complete, un-fragmented, un-artificial picture of the crime committed by the defendant, including necessary context, background and perspective." *Id.* (quoting *Norton v. Commonwealth*, 890 S.W.2d 632, 638 (Ky. App. 1994)). "[T]he evidence of [the defendant's] incarceration in Kentucky ... provide[d] the setting and context within which he called and confessed to his father of the murder ... " *Major*, 177 S.W.3d at 708.

In *Kerr v. Commonwealth*, we also found that the defendant's arrest warrants were inextricably intertwined with the evidence of defendant's trafficking. 400 S.W.3d 250, 261 (Ky. 2013). There, the arrest warrants explained the police's surveillance of the defendant, his initial arrest, and further search of his hotel room which led to the discovery of evidence of trafficking. *Id.* "[A] jury 'cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'" *Id.* at 262 (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984) (citation omitted)). In *Kerr*, "[t]he existence of the arrest warrants here was necessary to an adequate understanding of the context of the officers' conduct—it provided the setting and context of the

11

events surrounding the officers' surveillance of [the defendant]'s guest room." 400 S.W.3d at 262-63.

Similar to these cases, we hold that Nix's probationer status and his no-scrapping condition were inextricably intertwined with the evidence of his trafficking. It was the traffic stop that initiated the encounter with Nix. But, it was his status as a probationer that called Waters' attention to him; it was the information from McHargue that led to the encounter. Additionally, the jury had to have some explanation for why Nix was arrested prior to the search of his vehicle. Without the fact that he was arrested for a probation violation, the jury would be left wondering how he could be taken into custody for an improper license plate. The jury also needed to have information as to who McHargue was, his familiarity with Nix, and the reason for the search of the vehicle. Only with this information would the jury understand the context for finding the evidence of trafficking. As such, the evidence was inextricably intertwined and admissible pursuant to KRE 404(b)(2). Therefore, the circuit court did not abuse its discretion in allowing this evidence to be admitted.

### C. The circuit court did not err in allowing Captain Halbleib to testify as an expert witness without personal knowledge.

On September 1, 2016, the Commonwealth filed a notice of expert witness, informing the defense of its intent to call Captain Mike Halbleib, Director of the Drug Task Force in the Bullitt County Sheriff's Office, as an expert witness in its case. On September 7, 2016, defense counsel filed a motion to exclude Captain Halbleib's testimony on various grounds. At that time, it appears the trial was scheduled for that same month but was later

continued to January, 2017. On September 12, 2016, the court addressed the notice and motion to exclude, finding that the defense was entitled to more information on the qualifications of the witness but that it could be accomplished at trial.

On January 26, 2016, when the Commonwealth called Captain Halbleib as a witness, Nix again objected to the witness, claiming the prosecution was broaching the area of the witness being "qualified as an expert witness." The defense stated the witness "may well meet minimum qualifications as expert" but they had yet to have a hearing as to the qualifications. The trial court found there was no need for a hearing as to the content of Captain Halbleib's testimony under *Daubert* and this Court's precedent, but the Commonwealth needed to lay the proper foundation for the witness's expert qualifications.

The trial court specifically overruled the objection and questioning of the witness continued. Captain Halbleib testified as to his experience, awards, and credentials and testified that the bindles of drugs, packaged separately, found in Nix's car were consistent with drug trafficking, from his experience.

To this Court, Nix claims that because Captain Halbleib "had no personal knowledge of the case as required by KRE 602," then he "should not have been allowed to testify." Yet, it is clear from this record and defense counsel's arguments at trial that Captain Halbleib was called as an expert witness pursuant to KRE 703. Defense counsel even requested a hearing as to the qualifications of the expert witness. KRE 602 specifically states that the requirement for personal knowledge rule "is subject to the provisions of KRE

13

703, relating to opinion testimony by expert witnesses." As an expert, Captain Halbleib did not have to have personal knowledge of the underlying case but was merely required to rely upon trustworthy facts or data under KRE 703. Thus, there was no error in allowing Captain Halbleib to testify.

### D. The Circuit Court did not abuse its discretion in denying Nix's motion for mistrial.

At trial, the Commonwealth introduced a request for evidence examination to the Kentucky State Police as its Exhibit 8 through Chief Terry Phillips. He identified and explained the form that he personally brought to the lab with the physical evidence in question. The Commonwealth then called Tom Frisby, a forensic chemist with Kentucky State Police Laboratory. Defense counsel attempted to question him about Exhibit 8 and he stated that the form was different than the one he had in his file. After further examination, defense counsel moved for a mistrial based on the fact that they did not have this other form and there were "substantial differences" from the form turned over in discovery. The trial court conducted a brief hearing outside the presence of the jury, questioned Mr. Frisby about the two documents, and heard argument from both the defense and the Commonwealth. The court determined that there were no substantial differences between the forms and overruled the motion for mistrial, finding no prejudice to Nix.

Both documents were preserved in the record and this Court has reviewed the differences between the two. The trial court accurately determined that the differences between the two forms were minimal; the description of the evidence and offense information are practically identical.

14

The main differences are: the addition of a sticker from the lab with a lab item number; typographical changes (font size, date format, a small handwritten word, etc.); the specific language in the examination requested (one requests examination for methamphetamine and the other requests for identification of any unknown alleged illegal drug); and the addition of signatures at the bottom of Mr. Frisby's form (the names were already listed on the form from Chief Phillips). Most notably is the fact that the offense date, location, offender name, offense description, and description of the evidence are substantially the same.

The law on review of a decision to grant or deny a mistrial is clear: "Broadly speaking, '[w]hether to grant a mistrial is within the sound discretion of the trial court, and 'such a ruling will not be disturbed absent … an abuse of that discretion.'" *Cardine v. Commonwealth*, 283 S.W.3d 641, 647 (Ky. 2009) (quoting *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005) (quoting *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004))). "However, '[a] mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity.'" *Cardine*, 283 S.W.3d at 647 (internal citation omitted). Even though "a trial court is vested with discretion on granting a mistrial, the power to grant a mistrial ought to be used sparingly and only with the utmost caution, under urgent circumstances, and for very plain and obvious causes." *Id.* (quoting *Commonwealth v. Scott*, 12 S.W.3d 682, 685 (Ky. 2000) (citing *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991)). This "error must be

15

'of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by grant of a mistrial]." *Cardine*, 283 S.W.3d 641, 647 (Ky. 2009) (quoting *Bray*, 177 S.W.3d at 752 (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996) (emphasis removed))).

We hold that the trial court did not abuse its discretion in denying a mistrial. What occurred was an inadvertent error in form. The two forms were largely the same; we see no prejudice incurred by Nix. There was no new information presented in the new form that was exculpatory or would have changed the outcome of Nix's trial. As there was no error that denied Nix a fair and impartial trial, we affirm the trial court's decision to deny a mistrial.

### III.  CONCLUSION

After a careful review of the record and the issues before this Court, we hold that there was no error in the trial court's rulings of law. As such, we affirm the judgment of the Bullitt County Circuit Court.

All sitting. All concur.


COUNSEL FOR APPELLANT:

John Cook
John A. Cook & Associates


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General

16