# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 19, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

DATE _01-16-20_

2018-SC-000343-MR

PAUL EVERETT TAYLOR                             APPELLANT

V.
                ON APPEAL FROM FAYETTE CIRCUIT COURT
                HONORABLE KIMBERLY N. BUNNELL, JUDGE
                        NO. 17-CR-00613

COMMONWEALTH OF KENTUCKY                     APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

While on parole in 2017, Appellant, Paul Taylor, was found to have possessed drug paraphernalia, synthetic marijuana, 150 grams of heroin, and $18,000 in cash. These items were uncovered during a home visit by parole officers and a subsequent search of Taylor's home.[1] Taylor was indicted for first degree aggravated trafficking in a controlled substance (100 grams or

---

[1] Taylor was on parole after having been previously convicted of several drug trafficking and possession offenses, as well as tampering with physical evidence and bail jumping. His parole agreement included the following relevant provisions: "I understand that I shall be subject to search and seizure without a warrant if my [parole] officer has reasonable suspicion that I may have illegal drugs, alcohol or other contraband on my person or property . . . . I understand that my Probation and Parole Officer may visit my residence . . . at any time."

greater of heroin), trafficking in synthetic drugs, possession of drug paraphernalia, and being a first-degree persistent felony offender (PFO). Taylor filed a motion to suppress the evidence obtained during the search of his residence, which was denied by the trial court.

As a result, Taylor entered a conditional guilty plea reserving his right to appeal the suppression issue. He was sentenced to ten years' imprisonment on the aggravated trafficking charge, which was enhanced to twenty years by the PFO. In addition, Taylor received a sentence of twelve months imprisonment on an amended charge of possession of synthetic marijuana and twelve months on the charge of possession of drug paraphernalia. The court ordered that these sentences be served concurrently to each other but consecutively to any other previous felony sentences. Taylor now appeals, arguing one point of error: the trial court improperly denied his motion to suppress the contraband evidence as fruits of an illegal entry into his home.

## I. BACKGROUND

On April 10, 2017, parole officer Courtney Turpin received an anonymous "community complaint phone call" alleging that Taylor had been selling heroin at his residence. The caller specifically alleged that her family member had died after using heroin purchased from Taylor. Officer Turpin and another parole officer, Roger Copher, went to Taylor's residence to perform a home visit.

When they arrived, the officers observed two men standing by the mailbox and a woman cleaning a glass window near the front door. Both

2

officers testified that they believed the woman was Taylor's wife. As they approached, they heard someone say, "P.O.'s here." The officers then heard Taylor's voice respond, "Who?" As they neared the front door, the officers observed Taylor go down a hallway and toward the back of the home in a "jogging" manner. After the officers knocked on the front door, an unknown man exited the house, and the woman told the officers that they could enter the home.

After entering the home, multiple items of suspected contraband were found. A search warrant was eventually secured, and a full search of the home was conducted. Discussion of the details of those searches is unnecessary, as the only issue before us today is whether the parole officers' entry into the home was lawful. The searches of the home produced multiple bags of heroin, as well as digital scales, an iPhone 6s, over $18,000.00 in currency, and bags of synthetic marijuana.

Taylor filed a motion to suppress the evidence found in the home as fruits of an illegal entry into the home. The trial court held a suppression hearing at which Parole Officers Turpin and Copher, as well as Lexington Police Detective Danny Page, testified. Near the conclusion of the suppression hearing, defense counsel conceded that there was reasonable suspicion to search the residence once the officers were inside. However, counsel contested the validity of the alleged consent to enter the home, the existence of reasonable suspicion, and the validity of the anonymous phone call that prompted the home visit.

3

In further support of his motion to suppress the evidence, Taylor also raised an equal protection claim. He specifically argued that: "by making a distinction between probationers and parolees and giving fewer rights to parolees, the same officers who monitor both probationers and parolees are given more latitude to search the property and the person of a parolee." *See Bratcher v. Commonwealth* 424 S.W.3d 411, 415 (Ky. 2014) (holding that "the Fourth Amendment presents no impediment against a warrantless and *suspicionless* search of a person on parole," but leaving undecided whether a warrantless search without reasonable suspicion of a person on probation is consistent with the Fourth Amendment). Taylor alleges that this is a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

The trial court denied the suppression motion without entering any written findings of fact or conclusions of law. The court's oral ruling denying the motion was on the basis that the officers received consent to enter the residence. The trial court also found that even if the parole officers had not received valid consent, they had reasonable suspicion to enter and search the residence. Because the court determined that there was proper consent and reasonable suspicion, the court did not consider Taylor's equal protection argument.

## II. ANALYSIS

Our review of a suppression decision is two-fold. First, "[w]e review the trial court's factual findings for clear error, and deem conclusive the trial court's factual findings if supported by substantial evidence. The trial court's application of the law to the facts we review de novo." *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). In this case, the trial court's factual findings regarding the officers' entry into the home are limited other than to say the officers had consent. A trial court's finding of "consent," without more, includes both a factual finding that a person "consented" to, in this case, the parole officers' entry into the home and a legal conclusion that the consent given was valid. In the case at bar, despite the minimal findings by the trial court, Taylor concedes that the trial court's factual findings regarding consent were supported by substantial evidence, but disputes that the facts constituted legal consent to the entry into Taylor's home.

In *United States v. Matlock*, 415 U.S. 164 (1974), the United States Supreme Court "reaffirmed that a warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of 'unreasonable searches and seizures' if the officers have obtained the consent of a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990) (citing *Matlock*). Our Court has held, "The test for whether third-party consent is valid is whether a reasonable police officer faced with the prevailing facts reasonably believed that the consenting party had common authority over the premises to be searched." *Commonwealth*

5

*v. Nourse*, 177 S.W.3d 691, 696 (Ky. 2005) (citing *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir.2004)).

> [T]he proper inquiry for police when determining if a third party has authority to consent to the search of a residence is not whether the third party has legal authority to enter or control the residence, but whether it is reasonable to believe that the third party actually lives at, has general access to, and/or possesses mutual use of the residence for most purposes.

*Id.* at 697.

Further, our Court has cited with approval *United States v. Jenkins*, 92 F.3d 430 (6th Cir.1996), in which the United States Court of Appeals for the Sixth Circuit held "that in the absence of additional information to the contrary, it is generally considered reasonable for police officers to presume that persons answering knocks at the door of a residence have authority to consent to a search of that residence." *Id.* at 697-98. (citing *Jenkins*, 92 F.3d at 437).

As previously discussed, Officers Turpin and Copher were permitted to enter the home by a woman who was cleaning glass at the front door. The fact that she was cleaning the home could indicate that she lived there. Further, both officers testified that the woman was Taylor's wife. Officer Turpin did not testify as to the basis of her belief that the woman was Taylor's wife. However, Officer Copher specifically testified that he believed the woman was Taylor's wife because he had previously supervised Taylor and had met the woman on prior home visits. Officer Copher testified that he did not know if the woman lived there but assumed that she did. No evidence to the contrary was offered

6

at the suppression hearing.

Based on the facts available to Officers Turpin and Copher at the time of the entry into Taylor's house, it was objectively reasonable for the officers to believe that the woman who said they could enter the house had common authority over the house. Accordingly, the trial court did not err when it denied Taylor's motion to suppress evidence obtained as a result of the warrantless entry and search of Taylor's home.

Because we find no error in the trial court's conclusion that the parole officers had consent to enter Taylor's home, we need not reach the issues of whether reasonable suspicion supported their entry into the home or whether Taylor's equal protection rights were violated.

## III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the Fayette Circuit Court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. All concur. Nickell, J., not sitting.

COUNSEL FOR APPELLANT:

Steven Goens
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Mark Barry
Assistant Attorney General