RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0646-MR

CHRISTOPHER S. NEWMAN                      APPELLANT

v.             APPEAL FROM WEBSTER CIRCUIT COURT
HONORABLE DANIEL M. HEADY, JUDGE
ACTION NO. 22-CR-00013

COMMONWEALTH OF KENTUCKY             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

COMBS, JUDGE: In this criminal appeal, the Appellant, Christopher S. Newman (Newman), appeals from an Order of the Webster Circuit Court denying his motion to suppress. After our review, we affirm.

On January 24, 2022, Newman's girlfriend, Elizabeth Cherry, reported that he had assaulted her and had taken her (rental) van containing her purse and cell phone. At that time, Newman had active and valid arrest warrants out of Webster County and Hopkins County -- as well as a warrant for a parole

violation for the Illinois Department of Correction. Cherry reported the incident to Officer Michael Tabor of the Webster County Sheriff's Department, who was familiar with Newman and knew about the warrants. When Cherry met with Officer Tabor, she gave him consent to ping her cell phone. Officer Tabor also requested a warrantless ping of Newman's cell phone. Ultimately, Newman was arrested following a multi-county police chase.

On February 9, 2022, a Webster County Grand Jury indicted Newman on numerous offenses: Speeding 15 MPH Over; Unauthorized Use of Motor Vehicle, 1st Offense; Reckless Driving; Fleeing or Evading Police, 2nd Degree; Fleeing or Evading Police, 1st Degree; Resisting Arrest; 7 counts of Wanton Endangerment, 2nd Degree; 11 counts of Wanton Endangerment, 2nd Degree; Burglary 1st (Amended to Burglary 2nd by Grand Jury); Possession of Controlled Substance, 1st Degree, 1st Offense (Meth); Drug Paraphernalia -- Buy/Possess; and Persistent Felony Offender (PFO), 1st Degree.

On June 16, 2022, our Supreme Court rendered *Commonwealth v. Reed*, 647 S.W.3d 237, 250 (Ky. 2022), holding that "individuals have a reasonable expectation of privacy in their cell phone's cell-site location information and, thus, that information is entitled to constitutional protection under the Fourth Amendment. Absent an exception to the warrant requirement . . . law

enforcement must obtain a warrant before acquiring a person's cell-site location information."

On March 10, 2023, Newman, by counsel, filed the subject motion to suppress the use of real-time cell-site location information (CSLI) without a warrant, citing the recent decision in *Reed*, *supra.*

On March 22, 2023, the trial court conducted a hearing on Newman's motion. Officer Tabor, Webster County Sheriff William Braden, and Newman testified. Following arguments, the parties submitted briefs. By Order entered on April 28, 2023, the trial court denied Newman's motion as follows in relevant part:

FINDINGS OF FACT

1. On January 24, 2022, the defendant, Christopher Newman, was arrested in Webster County, Kentucky on multiple felony charges following a high-speed police pursuit . . . across parts of three counties. . . .

2. Officer, Michael Tabor, was a deputy with the Webster County Sheriff Department on January 24, 2022, and he was dispatched to a call that Christopher Newman had taken his girlfriend Elizabeth Cherry's van without her permission and the van had Cherry's purse inside, with Cherry's cellphone being contained inside of her purse at the time of the initial unlawful taking. Cherry also advised that Newman had assaulted her and threatened her and that he had a firearm in his possession.

3. The van that Newman took from Cherry was a van that Cherry had rented. Newman left the van which contained the personal belongings of Newman and Cherry at a church on Sassafras Road in Webster

-3-

County, Kentucky, prior to switching vehicles at or slightly before 17:42 P.M. C.S.T., when Newman began driving a maroon Pontiac G6.

4. Newman drove the Pontiac G6 out of Webster County and into Hopkins County. Newman then drove from Hopkins County into McLean County where he was initially spotted and pursued by a McLean County Sheriff Deputy beginning at or slightly before 19:25 P.M. C.S.T.

5. Newman fled from the deputy and traveled from McLean County back into Hopkins County. The other responding law enforcement officers were notified of Newman's location(s) and multiple other units joined the pursuit which continued through part of Hopkins County and back into Webster County where officers set out spike strips in the hopes of ending the chase. Newman avoided the first set of spikes before a second set of spikes were successful at or slightly before 20:23 P.M. C.S.T. Once the PontiacG5 had come to rest, Newman fled from the car on foot . . . [and was ultimately] apprehended . . . at or slightly before 20:28/20:29 P.M. C.S.T.

6. Newman was initially located following the "pinging" of his cell phone and the phone of his girlfriend, Elizabeth Cherry. Newman's cell number was (270) 853-[XXXX] and his carrier was Verizon. Cherry's cell number was (270)635-[XXXX] and her carrier was AT&T. Cherry gave law enforcement permission to "ping" her phone on January 24, 2023. Newman did not give officers explicit written or verbal consent to "ping" his phone on January 24, 2023. . . .

7. On January 24, 2022, Newman had active and valid arrest warrants out of Webster County, Hopkins County, and a parole violation warrant for the Illinois Department of Corrections.

8. The court file and record reflect that Christopher Newman was placed on parole out of Illinois on September 27, 2021 (IDOC[1] case #Y30403 filed of record herein July 18, 2022). The parole agreement that Newman signed with IDOC contained paragraph ten wherein he consented to "a search of your person, property or residence under your control; including computers(s), peripherals and any and all media." On January 24, 2022, Newman was still on active parole out of the state of Illinois as Newman has had an out-of-state detainer and hold filed against him by the state of Illinois for the entire pendency of this action. This warrant was known to exist by the officers pursuing Newman on January 24, 2022.

9. Law enforcement obtained the real time cell-site location (CSLI) information on the phones for both Cherry and Newman. Cherry gave permission for law enforcement to obtain her real time CSLI and her phone was "pinged" at least three times. Newman did not give explicit permission for law enforcement to obtain his real time CSLI. No search warrant was sought by law enforcement to obtain Newman's real time CSLI. Law enforcement "pinged" Newman's phone and obtained real time CSLI on at least three occasions. There was a slight time delay in minutes from the time of each "ping" request until the time of each "ping" receipt. No other phone numbers were "pinged" by officers during the time of this incident. Law enforcement obtained an additional "ping" on the phone of either Newman or Cherry but the specific identify or number associated with this unidentified "ping" is unknown. Chief (now Sheriff) Braden testified that the "pings" were not overly helpful in locating Newman because the initial pings for each phone were "pinging" off different cell towers and the real-time locations provided were contradictory at times.

---

[1] The Illinois Department of Corrections.

10. Newman testified that he saw Cherry get out of the car with her phone in her hand and Newman denied that Cherry's phone remained with him in the Pontiac G6 after he abandoned the van. . . .

The trial court made additional detailed findings of fact regarding the specific cell phone pings that were requested/reported and further found that:

22. At or slightly before 19:01 P.M. C.S.T., Cherry's AT&T phone reported the "third" and final "ping" with a location of "W87.31804 N 37.44042.

. . .

24. Although the officers [Tabor and Braden] could not testify with any certainty as to the location of Cherry's phone throughout the entire incident and Cherry did not testify herself, the Court finds that Newman's self-serving testimony alone is unpersuasive. The Court finds based on the circumstantial evidence presented in the CAD[2], specifically the "ping" locations for Cherry's phone, that Cherry's cell phone was in the Pontiac G6 with Newman throughout the course of the multi-county high speed chase. Additional analysis to support this finding is set out in the conclusions of law set out below.

The trial court provided a thorough discussion of the exclusionary rule and its exceptions to the warrant requirement -- including the independent source doctrine, citing *Utah v. Strieff*, 579 U.S. 232, 237, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) (doctrine allows trial courts to admit evidence obtained in

---

[2] CAD stands for "Computer Aided Dispatch."

unlawful search if officers independently acquired it from separate, independent source).  The trial court concluded as follows:

> The *Reed* case . . . forms the primary basis in support of the Defendant's motion to suppress . . . .  In *Reed*, the Kentucky Supreme Court found that the defendant had a reasonable expectation of privacy in his real-time CSLI and that such information and data was [*sic*] protected under both the U.S. and Kentucky Constitutions.
>
> . . .
>
> [T]he Commonwealth acknowledges . . . *Reed* . . . [but] asserts that the existence of three other warrants for [Newman's] arrest justify [*sic*] the search of his real-time CSLI . . . .
>
> The Court finds it to be of particular importance that one of those . . . warrants was . . . for a parole violation from the [Illinois] Department of Corrections . . . .  In addition, contained within the case file and record was a parole agreement that Newman signed . . . .
>
> . . .
>
> [T]he Fourth Amendment presents no impediment against a warrantless and suspicionless search of a person on parole. *Bratcher v. Commonwealth*, 424 S.W.3d 411, 414-15 (Ky. 2014).  Suppression of evidence pursuant to the exclusionary rule applies only to searches that were carried out in violation of an individual's constitutional rights. *Copley v. Commonwealth*, 361 S.W.3d 902, 905 (Ky. 2012).
>
> . . .
>
> Without a constitutional right underpinning his motion to suppress, the Defendant has no basis for the application

for the exclusionary rule and the Defendant's motion to suppress must be therefore overruled on that ground as everything else is moot. However, given that the Defendant's parole status was glossed over, and such arguments were not made at the suppression hearing or argued by the parties, the Court will proceed with further analysis on the issues raised by the parties.

The trial court then reiterated that it did not find Newman to be a credible witness. The court explained that the CAD showed the latitude and longitude coordinates of the "final ping" on Cherry's phone. The court took judicial notice that those coordinates were for a location in McLean County. The court found that based upon the substantial evidence presented in the CAD -- specifically the ping locations for Cherry's phone, "that Cherry's cell phone was in the Pontiac G6 with Newman throughout the entire time of the multi-county high speed chase." Consequently, the court denied Newman's motion to suppress, having concluded that the real-time CSLI from Cherry's phone alone would have placed officers in the same area where Newman was ultimately located and, therefore, that it constituted an independent source of information.

Newman subsequently entered a conditional guilty plea preserving his right to appeal the suppression issue. And this appeal followed.

In *Warick v. Commonwealth*, 592 S.W.3d 276, 280-81(Ky. 2019), our Supreme Court discussed parameters of the exclusionary rule that are relevant to the case before us:

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This provision means that "*each* person has the right to be secure against unreasonable searches and seizures in *his own* person, house, papers, and effects." *Minnesota v. Carter*, 525 U.S. 83, 92, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) (Scalia, J., concurring, joined by Thomas, J.). The exclusionary rule, the rule that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure," was judicially created to safeguard that right. *United States v. Calandra*, 414 U.S. 338, 347-48, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (citations omitted) . . . . The rule excludes both the "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," commonly referred to as the "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984) (citations omitted).

"Despite its broad deterrent purpose [against police misconduct], the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra*, 414 U.S. at 348, 94 S. Ct. 613. Three exceptions to the rule "involve the causal relationship between the unconstitutional act and the discovery of evidence." *Utah v. Strieff*, ___ U.S. ___, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016). These exceptions are the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. *Id.* at 2061. The independent source doctrine "allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Id.* (citing *Murray v. United States*, 487 U.S. 533, 537, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988)).

(Italics and square brackets original.)

"In reviewing a trial court's decision to deny a motion to suppress evidence, we accept the trial court's findings of fact as conclusive if they are supported by substantial evidence. We then review de novo the trial court's application of the law to those facts." *Reed*, *supra*, at 242-43 (footnote omitted).

Newman raises several issues on appeal. His initial argument is that two of the trial court's findings of fact are not supported by substantial evidence. He first challenges the trial court's finding that Cherry's cell phone was in the Pontiac G6 with Newman throughout the chase. Newman claims that Officers Tabor and Braden expressed their doubts about the accuracy of the pings and the adequacy of the CAD. He also argues that the court ignored Officer Tabor's testimony that he believed Cherry's phone remained in the van and Newman's testimony that Cherry had her phone with her.

Newman is essentially re-arguing his case. "At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court." *Pitcock v. Commonwealth*, 295 S.W.3d 130, 132 (Ky. App. 2009). Choosing "between various competing and inconsistent versions of the events . . . does not undermine the decision. In fact, that is the essential function of the trial court as the trier of fact . . . ." *Hampton v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007). As was its prerogative, the trial court "afford[ed] little if any credibility and weight to

Newman's testimony and instead turn[ed] to the CAD exhibit that was admitted."

We conclude that the trial court's finding -- that Cherry's cell phone was in the Pontiac G6 with Newman -- is supported by substantial evidence.

Next, we address Newman's argument commencing at page 28 of his Appellant's brief regarding the independent source doctrine. As noted above, the doctrine allows the admission of evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. Newman argues that this exception does not apply because he disputes -- again -- that Cherry's phone was in the car with him. We have already determined that substantial evidence supports the trial court's finding that "Cherry's cell phone was in the Pontiac G6 with Newman throughout the course of the multi-county high speed chase." Thus, the issue is whether the trial court correctly applied the law to those facts.

However, the Commonwealth contends that the "the pinging of Cherry's phone, and the coordinates that it provided . . . provided an independent source to locate Cherry's phone and thereby, Newman." We agree.

We need not reach the remaining issues which Newman raises. We do note that *Bratcher*, *supra*, upon which the trial court relied concerning a warrantless search of a parolee has since been overruled by our Supreme Court in

*Gasaway v. Commonwealth*, 671 S.W.3d 298, 329 (Ky. 2023).  We have reviewed

*Gasaway* and *Bratcher* and find them distinguishable from the case before us.

Again, we conclude that based on the CSLI with respect to Cherry's

cell phone, Newman was properly found and apprehended.  That one issue is

sufficient to support the trial court's conclusion to deny his motion to suppress.

Therefore, we affirm the Order of the Webster Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky